UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JENNY CHAU,

                                  Plaintiff,                          18-cv-3365 (PKC)

                -against-                                             OPINION
                                                                     AND ORDER

RYAN DONOVAN, GRANGER
MANAGEMENT LLC, and GRANGER
MANAGEMENT HOLDINGS LLC,

                                  Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

             Plaintiff Jenny Chau alleges in her Second Amended Complaint ("SAC," Doc 21)

that defendant Ryan Donovan, as principal and chief compliance officer of Granger Management

LLC and Granger Management Holdings LLC (together, "Granger"), misused his position of

power to tempt Ms. Chau with a lucrative job opportunity and investment while, during the same

period, sexually assaulting her.   In this diversity action, Ms. Chau brings claims against Mr.

Donovan for assault, battery, intentional and negligent infliction of emotional distress ("IIED" and

"NIED"), and claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290

et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101

et seq. ("NYCHRL").   She alleges that Granger is vicariously liable for Mr. Donovan's actions

and also liable as an employer pursuant to the NYCHRL.[1]  Mr. Donovan moves, pursuant to Rules

12(b)(1) and 12(b)(6), Fed. R. Civ. P., to dismiss all claims of the SAC except those for battery

---

[1] Ms. Chau originally brought an NYSHRL claim against Granger, which has been dropped.  Compare Am. Compl.
at 18; Doc 9, with SAC; Doc 21.

and assault.  Granger moves to dismiss the two counts filed against it.  For the reasons that will be explained, the motions will be granted in part and denied in part.

BACKGROUND

Chau and Donovan met as co-workers in 2005 while working at the New York City offices of Bear Stearns.  (SAC ¶¶13−14.)  By 2017, Chau had moved to California and was raising capital for a new venture fund named MotiVentures. (SAC ¶¶16, 19−20.)  Chau asked Donovan if his company, Granger, which invests money on behalf of a limited number of wealthy families, (SAC ¶5), "might want to invest in or partner with MotiVentures." (SAC ¶19.)  Donovan "confidently assured Chau that Granger would probably invest $25-50 million because his partners trusted him."  (SAC ¶26.)  Donovan joked with Chau that "if Granger declined to invest then he would offer $5,000 of his own money into Chau's fund if he could have a threesome with Chau and his wife."  (SAC ¶28.)  Donovan continued to text with Chau and "divert talk of business into talk of alcohol and sex."  (SAC ¶29; see id. ¶33.)

Chau, Donovan, and Chau's MotiVentures partners met for dinner in New York City on April 19, 2017 to discuss Granger's potential investment. (SAC ¶35.)  After dinner, Chau and Donovan went to a hotel bar to discuss Chau's MotiVentures partners.  (SAC ¶36.)  Donovan "confessed that . . .  he was only using his authority and influence within Granger to steer an investment to MotiVentures 'because of her,'" and "fe[]d Chau drinks, with the intent to get her drunk."  (SAC ¶¶36−37.)  Donovan began "touching Chau inappropriately," "convinced Chau to ride in his Uber" where he continued to touch her inappropriately, and "forced his way onto the elevator" at her hotel despite repeated objections.  (SAC ¶¶37−39.)  When Chau opened the door to her hotel room, Donovan "powerfully pushed past her into the room," "began touching her in a

sexual way," "removed his pants and forced himself on top of her," and groped, kissed, digitally penetrated her, and masturbated next to her without Chau's consent. (SAC ¶39.)

Following the April 19, 2017 encounter, Chau "continued communicating with Donovan because she did not want to lose the potential investment," and Donovan continued to "change[] the subject to sex." (SAC ¶¶43, 45, 47, 49, 61.) In May 2017 Donovan informed Chau that Granger would not be investing in MotiVentures. (SAC ¶46.) He also informed her that "he would find a spot for Chau to work for him at Granger" if her position at MotiVentures was terminated. (SAC ¶46.) Donovan told Chau that getting her a job would be "99% [his] call," and quoted her a starting salary of $250,000 with bonuses around $500,000. (SAC ¶¶51−52.) He also stated that Chau "might be able to do some things that would get [him] to pay [her] more," which Chau understood to refer to sexual acts with him and his wife. (SAC ¶53.) Donovan and Chau discussed "start dates and how Chau would have to come to New York City to interview." (SAC ¶53.)

Donovan informed Chau he wanted her to meet "his bosses," the two named partners of Granger, but did not want to pay for Chau to fly to New York. (SAC ¶56.) He instead suggested she meet him in San Diego, CA in October 2017, where he would be attending a conference, to discuss the job. (SAC ¶56.) In San Diego they "discussed salaries, the type of work Chau would do, and Granger in general." (SAC ¶58.) Donovan made Chau understand that her job responsibilities would include investment advising, sales, and operations. (SAC ¶59.) During the meeting, Donovan groped and touched Chau inappropriately while in San Diego at a hotel bar

despite her repeated objections. (SAC ¶62.) Shortly after Donovan returned to New York City, he informed Chau that Granger could no longer hire her. (SAC ¶63.)

Chau spoke with friends and various mental health professionals about her experience and "came to realize that the treatment that she had suffered" by Donovan "was wrong." (SAC ¶¶65−68.) She brought suit in April 2018 (Doc 1.)

APPLICABLE LAW

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficient of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, a court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. For the purposes of a motion to dismiss, the Court must accept all factual allegations in the SAC as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). A court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably . . . questioned," In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 208 (S.D.N.Y. 2012) (quoting United States v. Bryant, 402 F. App'x 543, 545 (2d Cir. 2010)), and of court filings "to establish the[ir] existence," but not for the truth of the facts asserted therein, Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Glob. Hub Ltd. v. Porsche Auto.

Holdings SE, 763 F.3d 198, 208−09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A motion to dismiss under Rule 12(b)(1), Fed. R. Civ. P., is decided under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2008) (Sotomayor, J.), abrogated on other grounds by Lexmark Int'l, Inv. v. Static Control Components, Inc., 572 U.S. 118, 126−27 (2014).  However, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."  Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  Unlike a Rule 12(b)(6) motion, for which the movant bears the burden of proof, on Rule 12(b)(1) motions "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

The parties have assumed New York State law governs plaintiff's asserted claims. "[I]mplied consent . . . is sufficient to establish choice of law."  Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v.Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)).

DISCUSSION

I.     Donovan's Motion to Dismiss

Donovan moves to dismiss Counts III (intentional infliction of emotional distress), IV (negligent infliction of emotional distress), and VI (discrimination in violation of the NYCHRL and NYSHRL) of the SAC pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  The Court will address the statutory claims first.

a. <u>Discrimination in violation of New York City and State Human Rights Laws</u>

Chau claims that Donovan failed to hire her because of her gender after she refused to submit to sexual demands in violation of the NYSHRL, N.Y. Exec. Law § 290 <u>et seq.</u>, and NYCHRL, N.Y.C. Admin. Code § 8-101 <u>et seq</u>. Donovan moves to dismiss those claims because Chau failed to allege discriminatory impact in New York. In the alternative, he moves to dismiss Chau's NYSHRL claim for failure to allege Donovan meets the "employer" requirement, and the NYCHRL claim for failure to serve notice pursuant to § 8-502(c) of the Administrative Code.[2]

i. <u>Chau's claims meet the impact requirement of the NYSHRL and NYCHRL</u>

"In order for a nonresident to invoke the protections of the NYSHRL and NYCHRL, she must show that the discriminatory act had an impact within the boundaries of the State and City, respectively." <u>E.E.O.C. v. Bloomberg L.P.</u>, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) (citing <u>Hoffman v. Parade Publ'n</u>, 15 N.Y.3d 285 (2010)).

Chau concedes that at all relevant times she lived in California. (SAC ¶1.) She claims that the allegedly discriminatory acts had an impact in New York City because she "was denied employment by a New York City employer, for a job based in New York City, because of her refusal to engage in sexual relations with Mr. Donovan . . . ." (Opp. Mem. at 14; Doc 42.)

Although Chau never worked in New York City for Granger or Donovan, the job for which she alleges she was not hired in violation of the NYCHRL and NYSHRL would have offered her employment within New York City. (SAC ¶59.) The impact requirement is "intended to protect those who work *in* the State and City." <u>Bloomberg</u>, 967 F. Supp. 2d at 865; <u>see</u> <u>id.</u>

---

[2] While Count VI is styled under the header "Discrimination in violation of [the NYSHRL and NYCHRL]," SAC at 20, Chau further alleges under this count that "Donovan's withdrawal of the job offer after Chau objected to the unlawful terms demanded constitutes retaliation against Ms. Chau," SAC ¶112; <u>see</u> N.Y. Exec. Law § 296(7); N.Y. Admin Code § 8-107(7). The Court will consider Donovan's arguments to the extent they apply to Chau's retaliation claims as well.

(dismissing claims that alleged only a "tangential relationship between New York and the actions" complained of). Even "[w]here the discriminatory conduct occurs outside the geographical bounds of New York City, courts have found that the impact requirement is satisfied if the plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's employment within the city." Anderson v. HotelsAB, LLC, 15cv712-LTS-JLC, 2015 WL 5008771, at *2 (S.D.N.Y. Aug. 24, 2015). Because Chau alleges she would have taken a position in New York City had she not been discriminated against, she has satisfied the requirement that the alleged discriminatory act had an impact within the boundaries of New York City, regardless of whether the conduct occurred in California or New York City. Cf. Leon v. Rockland Psychiatric Ctr., 232 F. Supp. 3d 420, 437 (S.D.N.Y. 2017) (dismissing refusal to hire claim for failing to meet impact requirement because the position plaintiff applied for was not located in New York City); Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 362−63 (S.D.N.Y. 2007) (upholding NYSHRL and NYCHRL claims where discriminatory act occurred in Paris but affected employee's job in New York City).

    ii.    Individual liability under N.Y. Exec. Law § 296

In the alternative, Donovan contends that Chau's NYSHRL claim should be dismissed for failing to allege that Donovan is an "employer," or that he meets the requirements to establish aiding and abetting liability under Executive Law section 296(6).

Claims under the NYSHRL are analyzed under the same standards as claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, with minor exceptions. See Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (exception for aiding and abetting liability of individuals under NYSHRL). Discrimination claims may be made under N.Y.

Executive Law § 296(1) or § 296(6). Section 296(1)(a) prohibits "employer[s]" from "discriminat[ing] against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). "The NYSHRL does not define the term 'employer.'" Wang v. Phx. Satellite Television US, Inc., 976 F. Supp. 2d 527, 533 (S.D.N.Y. 2013) (quoting State Div. of Human Rights on Complaint of Emrich v. GTE Corp., 487 N.Y.S.2d 234, 235 (4th Dep't 1985)); see Patrowich v. Chem. Bank, 63 N.Y.2d 541, 543 (1984) ("The Human Rights Law definition of employer (Executive Law, § 292, subd. 5) relates only to the number of persons employed and provides no clue to whether individual employees of a corporate employer may be sued under its provision.").

In Patrowich, the New York Court of Appeals stated that an individual may not be liable as an employer if she "is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." 63 N.Y.2d at 542. The Second Circuit has affirmed this test, see Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012), and further stated that "[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination,'" Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)). Patrowich noted that "economic reality" governs who may be sued. 63 N.Y.2d at 543−44. Accordingly, to determine whether an employee may be considered an employer under the NYSHRL, courts have looked to an individual's "selection and engagement of the employee," "payment of salary or wages," "power of dismissal over the employee," and "power to control the employee's conduct." Cater v. New York, 316 F. Supp. 3d

660, 674 (S.D.N.Y. 2018) (internal quotation marks omitted); <u>Chamblee v. Harris & Harris, Inc.</u>, 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001) (similar).

        The facts in the SAC, accepted as true, are sufficient to support a claim that Donovan had the requisite control over Chau to consider Donovan an "employer" for purposes of the NYSHRL. Although Donovan did not hold an ownership interest in Granger, (SAC ¶3), he was "Principal and Chief Compliance Officer" of Granger (SAC ¶49), who said that getting Chau a job at Granger was "99% my call." (SAC ¶51.)[3]  He told Chau he could "use his influence" at the company "for a potential job" for Chau.  (SAC ¶49.)  According to the SAC, Chau understood through Donovan's words and actions that he "was to be her supervisor," that "he wanted to hire her," and that "the job was real and it was hers if she wanted it." (SAC ¶59.)  In San Diego, Donovan discussed with her "salaries, the type of work Chau would do, and Granger in general." (SAC ¶58.)  Donovan purported to have control over salaries when he said "you might be able to do so things that would get me to pay you more" in discussing a potential job offer with Chau. (SAC ¶53.)  After the meeting at which Chau repeatedly refused Donovan's sexual advances, Donovan called Chau and notified her that "Granger could no longer hire her."  (SAC ¶63.) Through these statements, Donovan represented to Chau supervisory responsibilities, powers in support of hiring, firing, and salary decisions, and power to do more than carry out personnel decisions made by others.

        "Experience has shown that a complaint may be sufficient to withstand a motion to dismiss, but, after discovery, the facts may look quite differently on a motion for summary judgment or at trial." <u>Doran v. N.Y. State Dep't of Health Office of Medicaid Inspector Gen</u>., 15

---

[3] The SAC does not define the parameters of "Principal."  The term is broad enough to include "a person who has controlling authority or is in a leading position . . . ."  Webster's Third New International Dictionary (unabridged) (Merriam-Webster 2018) (online).

cv 7217 (PKC)(SN), 2017 WL 836027, at *16 (S.D.N.Y. Mar. 2, 2017). At this stage, Chau has alleged enough to allow her claims against Donovan under the NYSHRL to proceed. See Chamblee, 154 F. Supp. 2d at 677 (liability for manager with authority to set schedules and salaries who participated in the discriminatory conduct); Hicks v. IBM, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999) (liability for supervisors and principal agents of company who participated in discriminatory conduct); N.Y. State Div. of Human Rights v. ABS Elecs., Inc., 958 N.Y.S.2d 502, 504 (2d Dep't 2013) (no liability for company but liability for manager who had power to do more than carry out personnel decisions).

   "[T]he NYSHRL also provides for 'aiding and abetting' liability." Griffin v. Sirva Inc., 835 F.3d 283, 290 (2d Cir. 2016); see N.Y. Exec. Law § 296(6).[4] An individual may be held liable for aiding and abetting unlawful discriminatory acts if the individual "actually participates in the conduct giving rise to a discrimination claim." Feingold, 366 F.3d at 158 (quoting Tomka, 66 F.3d at 1317);[5] see Rojas, 660 F.3d at 107 n.10. There are differing conclusions in this district over the extent to which an individual can be liable for aiding and abetting his own conduct. See Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 522−23 (S.D.N.Y. 2015) (collecting cases). For example, courts in this district have found claims for aiding and abetting liability sufficiently pled by alleging "a primary violation committed by another employee or the business itself," Hicks, 44 F. Supp. 2d at 600 (citation omitted); see id. (collecting cases), or where an individual primarily

---

[4] Donovan argues the Court may not consider aiding and abetting liability because Chau fails to mention in the SAC that NYSHRL liability should be pursuant to section 296(6). "[T]he failure of a complaint to cite a statute (or in this case a subsection of the statute) in no way affects the merits of the claim." Hicks, 44 F. Supp. 2d at 600 n.4 (citing Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988)); see id. ("[I]t does not matter that plaintiff did not use words such as aid, abet, or incite, in the complaint.").

[5] Tomka's theory of aiding and abetting liability has not been adopted by all New York courts, and the New York Court of Appeals has yet to address the issue. Compare Steadman v. Sinclair, 636 N.Y.S.2d 325, 326 (1st Dep't 1996) (applying Tomka to claims brought pursuant to section 296(6)), with Trovato v. Air Express Int'l, 655 N.Y.S.2d 656, 657 (2d Dep't 1997) (rejecting Tomka's liberal definition of aiding and abetting). This Court is bound by the decision of the Second Circuit in Tomka. Accord Stanley v. Guardian Sec. Servs., Inc., 800 F. Supp. 2d 550, 556 n.2 (S.D.N.Y. 2011).

directed the discriminatory conduct in concert with other employees or an employer, see Prince v. Madison Square Garden, 427 F. Supp. 2d 371, 385 (S.D.N.Y. 2006); see also Tomka, 66 F.3d at 1317 (aiding and abetting liability for employee whose conduct was the basis for corporate entity's liability).

However, the Court knows of no case where an individual has been held liable for aiding and abetting under the NYSHRL where that individual is an employer under 296(1) and no others, including the corporate entity, are alleged to be in concert with the individual. See Malanga v. NYU Langone Med. Ctr., 14cv9681, 2015 WL 7019819, at *5 n.3 (S.D.N.Y. Nov. 12, 2015) (stating where a single defendant is accused of discrimination, "[u]nder these circumstances, [c]ourts have been reluctant to impose individual liability for aiding and abetting under the NYSHRL") (internal quotation marks and citation omitted). Accord Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) ("Under the NYSHRL, an individual may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating that law.") (internal quotation marks, citation, and alterations omitted). Accordingly, the Court dismisses plaintiff's NYSHRL claim under section 296(6), but denies the motion to dismiss plaintiff's NYSHRL claim under section 296(1).

### iii. Chau's belated compliance with N.Y.C. Admin. Code § 8-502(c) is not fatal to her claim

Section 8-502(c) of the New York City Administrative Code requires that "[w]ithin 10 days after having commenced a civil action pursuant to subdivision a of this section, the plaintiff shall serve a copy of the complaint upon such authorized representatives [of the city commission on human rights and the corporation counsel]." N.Y.C. Admin. Code § 8-502(c). Chau filed notice with the City Commission on Human Rights on July 20, 2018 (Declaration of Pearl Zuchlewski at Ex. C; Doc 39), nearly three months after she filed the initial complaint in this

case, (Compl. of Apr. 17, 2018; Doc 1.)  Although Donovan "recognizes that the courts in this District generally have concluded that failure to comply with . . . § 8-502(c) does not warrant the harsh result of dismissal," he argues it is appropriate here because plaintiff was notified in Donovan's pre-motion letter to the Court of her failure to comply with section 8-502(c), yet filed the notice three weeks later.  (Donovan's Mot. to Dismiss at 14; Doc 38; see Ltr. Re: Intent to File Mot. to Dismiss; Doc 23.)

"[M]ost courts in this district have found that failure to serve under this provision does not justify dismissal."  Fakir v. Skyrise Rock Corp., 16 cv 4695 (JPO), 2016 WL 7192095, at *2 (S.D.N.Y. Dec. 12, 2016); see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 697 (S.D.N.Y. 1998) ("[G]iving notice under [section] 8-502(c) is not a condition precedent to the maintenance of an action under the City HRL . . . .").

The Court declines to dismiss based on belated service of notice.  Donovan's pre-letter motion informing Chau of her failure to give notice does not otherwise affect the Court's determination.  Waiting three weeks after receipt of the pre-motion letter to file notice is not evidence of "cavalierly disregard[ing]" section 8-502(c). (Donovan's Mot. to Dismiss at 14; Doc 38.)  Courts in this district have given plaintiffs similar amounts of time to serve their papers following weeks, if not months, of plaintiffs being put on notice as a result of defendants' motions to dismiss.  See, e.g., Fakir, 2016 WL 7192095, at *4 (directing plaintiff to serve notice within thirty days of the date of opinion); Eaton v. Goodstein Mgmt., Inc., 97 cv 6582 TPG, 1999 WL 1037868, at *6 (S.D.N.Y. Nov. 15, 1999) (thirty days from date of opinion); Klein, 26 F. Supp. 2d at 698 (twenty days from date of opinion).  Donovan's motion to dismiss plaintiff's statutory claims is therefore denied except with respect to claims under N.Y. Executive Law § 296(6).

b.   Intentional infliction of emotional distress

To state a claim for IIED under New York law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)).   "The first element requires that the defendant's conduct be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  In re Lyman Good Dietary Supplements Litig., 17 cv 8047 (VEC), 2018 WL 3733949, at *5 (S.D.N.Y. Aug. 6, 2018) (quoting Stuto, 164 F.3d at 827); see Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (describing requirement for IIED claim as "rigorous, and difficult to satisfy") (internal quotation marks and citation omitted).

"[I]n the rare instances where New York courts have recognized a claim for [IIED] in the employment context, the claims have alleged not merely sexual harassment, but more significantly, battery."  Wahlstrom v. Metro-North Commuter R.R. Co., 89 F. Supp. 2d 506, 529 (internal quotation marks and citation omitted); see Paulson v. Tidal, 16 cv 9049 (LTS)(OTW), 2018 WL 3432166, at *4 (S.D.N.Y. July 16, 2018) (describing physical assault or battery as "hallmarks of successful IIED claims").  Mr. Donovan does not challenge the cause of action for battery based on sexual assault in this case.  (Donovan's Mot. to Dismiss at 1 n.1; Doc 38.)  Ms. Chau alleges that Mr. Donovan engaged in "unwanted bodily contact with Chau" in April and October 2017, (SAC ¶75), which included "groping, kissing, very painful digital penetration," and "touching . . . inappropriately" despite being told to stop.  (SAC ¶¶39, 63.)   Thus, this is a rare instance where a plaintiff has alleged a plausible claim for extreme and outrageous conduct.

Donovan argues that Chau's claim for IIED is duplicative of her claim for battery. According to the Second Circuit, the New York Court of Appeals has "cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 159 (2d Cir. 2014) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 557−58 (1978)); see id. at 159 n.19 (explaining possible rationales for disallowing duplicative claims); Bender v. City of New York, 78 F.3d 787, 792 (2d Cir. 1996) ("We are uncertain whether the state courts would entertain an emotional distress claim in addition to the other torts alleged in this case."). "[S]tate courts and federal district courts in this Circuit have consistently held that the tort of [IIED] may not be used as a substitute for an available traditional tort theory." Caravalho v. City of New York, 13 cv 4174 (PKC)(MHD), 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted); see Bender, 78 F.3d at 791 (collecting New York state appellate court cases).

Chau's IIED claim does not overlap with her battery claim to the extent that it is subsumed within the battery claim. Chau alleges, in addition to the sexual battery events of April and October 2017, that over a period of several months Donovan placed "persistent sexual pressure" on Chau by texting her about threesomes with Donovan and his wife in exchange for funding for Chau's investment group or for a possible job offer. (SAC ¶¶28, 33, 39, 43, 47, 53, 64.) She further alleges he masturbated next to her in the hotel room in April 2017 without her consent. (SAC ¶39.) Because this potentially tortious conduct is not subsumed by Ms. Chau's battery claim (or assault claim), her IIED claim may proceed. See Roelcke v. Zip Aviation, LCC, 15 cv 6284 (DAB), 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018) (allowing IIED claims to proceed where alleged conduct was "not duplicative" of assault claims); cf. Caravalho, 2016 WL 1274575, at *23 (dismissing IIED claims where there were no allegations of potentially tortious

conduct, "for example verbal conduct," beyond the allegations underlying plaintiff's traditional tort claims).

Donovan also challenges Chau's claim for IIED for lack of a causal connection between the outrageous conduct and Chau's emotional distress. Chau has adequately pled causation. The campaign of distress Chau complains of took place between March and late October 2017. (SAC ¶¶28, 58.) Chau asserts that contemporaneous with the events of April 19, 2017 she "greatly and imminently feared [Donovan] would" engage in forced sexual intercourse, and that he performed acts of sexual battery on Chau that caused her a "great deal of pain." (SAC ¶¶39−40.) In June and July, she repeatedly told Donovan that his sexual comments offended her and that she felt "angry" about their non-consensual sexual encounter in April 2017. (SAC ¶¶54−55.) She asserts that "[t]hroughout 2017, Chau had felt uneasy about the pressure that Donovan maintained for her to engage in sex with him and/or his wife," and that the persistent sexual pressure left her "depressed," "upset," and manifested in "physical symptoms." (SAC ¶64.) She continued to feel "angry, upset," and suffered from "significant anxiety" in the fall of 2017 based on Donovan's conduct, which had continued through October 2017. (SAC ¶65; see id. at ¶¶58, 62.) She saw a therapist, psychiatrist, and counselor, and called a rape crisis hotline to seek help. (SAC ¶67.) She was "diagnosed as suffering from post-traumatic stress disorder and depression" as a result of Donovan's conduct. (SAC ¶69.) Given these facts, Chau has sufficiently pled that Donovan's alleged acts of sexual battery and continued sexual harassment were related to emotional distress experienced by Chau. See Mitchell v. Giambruno, 826 N.Y.S.2d 788, 790−91 (3rd Dep't 2006) (causal connection for IIED claim sustained by evidence that anxiety and depression increased as plaintiffs continued to complain about defendant's conduct over a period of years).

Donovan cites in support of his argument <u>Ruhling v. Newsday, Inc.</u>, CV 04-2430(ARL), 2008 WL 2065811 (E.D.N.Y. May 13, 2008). In <u>Ruhling</u>, a district court upheld a jury's award of damages for IIED where there was evidence that plaintiff complained of stress related to work-related discrimination "from the outset" and testimony showed that plaintiff complained of stress to a doctor seventeen days after an act of discrimination. <u>Id.</u> at *7. But <u>Ruhling</u> did not set a bright line rule for determining causation; it merely affirmed that a jury's determination as to a particular plaintiff was not against the weight of the evidence and that enforcement of the verdict would not be a miscarriage of justice. <u>Id.</u> at *4. Given the facts alleged in the SAC, the Court will allow Chau to proceed with her IIED claim.

      c.  <u>Negligent infliction of emotional distress</u>

Under New York law, a plaintiff may recover for the tort of NIED under either the "bystander theory" or the "direct duty theory." <u>Mortise v. United States</u>, 102 F.3d 693, 696 (2d Cir. 1996). The bystander theory, which creates liability for a defendant based on a plaintiff's "contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence," <u>Baker v. Dorfman</u>, 239 F.3d 415, 421 (2d Cir. 2000) (quoting <u>Bovsun v. Sanperi</u>, 61 N.Y.2d 219, 233 (1984)), is inapplicable here. Under the direct duty theory, a cause of action lies where plaintiff "suffers emotional distress caused by defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." <u>Id.</u> (internal quotation marks and citation omitted) (alterations

in original).  New York courts have also recognized a cause of action for NIED based on certain "special circumstances," id., which is not argued and is otherwise inapplicable here.

Donovan argues that Chau has not alleged Donovan owed her a special duty of care, as required, and that intentional or deliberate actions cannot create a cause of action for NIED. The Court agrees with Donovan on both points.

Under a direct duty theory of NIED, the duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696; see In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 508 F. Supp. 2d 244, 247 (S.D.N.Y. 2007) (similar); Wahlstrom, 89 F. Supp. 2d at 531 (dismissing NIED claims in a sexual battery case against an employer where no special duty was alleged and collecting cases involving sexual harassment or assault in the workplace).  But see Cucchi v. N.Y. City Off-Track Betting Corp., 818 F. Supp. 647, 656 (S.D.N.Y. 1993) (stating a cause of action for NIED will arise when a defendant owes a special duty or "where there is proof of a traumatic event" (citing Ford v. Vill. Imports, Ltd., 461 N.Y.S.2d 108, 108 (4th Dep't 1983)).  Chau has not alleged a specific duty owed to her by Donovan.

In any event, "because the actions alleged here were intentional and deliberate and allegedly in their nature offensive, they are outside the ambit of actionable negligence." Wahlstrom, 89 F. Supp. 2d at 531−32 (internal quotation marks and citation omitted); see Dan B. Dobbs et al., Dobbs' Law of Torts § 31 (2d ed. 2018) ("Any given act may be intentional or it may be negligent, but it cannot be both.").  The Second Circuit has recognized "the mutual exclusivity of negligence and battery."  United Nat'l Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 353 (2d Cir. 1993); see Bah v. City of New York, 13 cv 6690 (PKC)(KNF), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) ("Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence."); Mazzaferro v. Albany Motel Enters., Inc., 515 N.Y.S.2d 631, 632 (3rd Dep't

1987) (similar). "Though litigants may allege alternate, or inconsistent, claims in a pleading, Rule 8(d), Fed. R. Civ. P., when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." Bah, 2014 WL 1760063, at *13. Because the intentional tort claims are not challenged, (Donovan Mot. to Dismiss at 1 n.1; Doc 38), and all other acts alleged to comprise the NIED claim are intentional, see, e.g., supra Section I(b) (discussing the IIED claim); SAC ¶82 (incorporating allegations of IIED claim into NIED), the Court dismisses plaintiff's NIED claim.

II.     Granger's Motion to Dismiss

Two counts of the SAC are directed at Granger. Count V alleges that Granger is vicariously liable for Donovan's assault, battery, IIED and NIED. (SAC ¶¶88−99.) Count VII alleges that Granger is liable for discrimination and retaliation in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (SAC ¶¶114−28.) Granger moves to dismiss Count V under Rule 12(b)(6), Fed. R. Civ. P., and Count VII under Rule 12(b)(6) or 12(b)(1), Fed. R. Civ. P. The Court addresses each count in turn.

a.     Vicarious liability (Respondeat Superior)

Granger argues that Chau's claim for vicarious liability does not state a plausible claim for relief because Donovan's conduct was based on personal motives and not in furtherance of his employer's business.

"To state claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." Doe v. Alsaud, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014); see Riviello v. Waldron, 47 N.Y.2d 297, 302 (1979) ("[T]he doctrine of respondeat superior renders a master vicariously liable for a tort

committed by his servant while acting within the scope of his employment.").  "An employer will not be held liable under the doctrine of respondeat superior for actions which were not taken in furtherance of the employer's interest and which were undertaken by the employee for wholly personal motives."  Alsaud, 12 F. Supp. 3d at 677 (internal quotation marks, alterations, and citation omitted); see Riviello, 47 N.Y.2d at 302 (stating the test is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions" (internal quotations and citation omitted)).  If an employer has "general foreseeability" of the tortious conduct, an employee's actions may "fall within the scope of employment."  Adorno v. Corr. Servs. Corp., 312 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).  While the inquiry is typically "heavily dependent on factual considerations . . . where there is no conflicting evidence as to the materials facts, a court may make this determination as a matter of law."  Id. (internal quotation marks and citation omitted); see Alsaud, 12 F. Supp. 3d at 679 ("[R]espondeat superior claims are also dismissed at the pleading stage.").

The Court of Appeals of New York has set forth five factors to consider in evaluating whether tortious conduct is committed in the scope of employment;[6] however, "[n]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault."  Id. at 677; see Swarna v. Al-Awadi, 622 F.3d 123, 144−45 (2d Cir. 2010) ("New York courts consistently have held that sexual misconduct and related tortious

---

[6]The five factors are:
> [(1)] the connection between the time, place and occasion for the act; [(2)] the history of the relationship between employer and employee as spelled out in actual practice; [(3)] whether the act is one commonly done by such an employee; [(4)] the extent of departure from normal methods of performance; and [(5)] whether the specific act was one that the employer could reasonably have anticipated.

Riviello, 47 N.Y.2d at 303. New York courts "generally place greater emphasis on the fifth factor."  Adorno, 312 F. Supp. 2d at 517 (internal quotation marks and citation omitted).

behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." (internal quotation marks omitted)).  This case is no different.  Taking all alleged facts in the SAC as true, the SAC contains no allegations that Donovan's sexual assaults or sexual commentary related to offers of employment were within the scope of Donovan's employment with Granger, or were directed or foreseeable in any way by Granger.[7]  Chau makes generalized assertions in her Opposition that it is "quite possible that Granger had at least some knowledge of the troubling relationship between Mr. Donovan and Ms. Chau."  (Opp. Mem. to Mot. to Dismiss at 8; Doc 41.)  Yet she offers no facts in the SAC that, if taken as true, would substantiate these theories.  "[N]aked assertion[s]" without factual underpinnings will not survive a motion to dismiss.  <u>Twombly</u>, 550 U.S. at 557; <u>see</u> <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." (internal quotation marks and citation omitted)).

Chau appears to concede that the alleged tortious conduct for which Granger should be held vicariously liable occurred outside the scope of Donovan's employment.  <u>See</u> Opp. Mem. to Mot. to Dismiss at 5; Doc 41 ("Granger is liable for Mr. Donovan's tortious conduct even if it was outside the scope of his employment.") (capitalization modified).  Instead, she argues that "agency principles impose liability on employers even where employees commit torts outside the scope of employment." <u>Id.</u> at 5 (quoting <u>Burlington</u>, 524 U.S. at 758).  The agency law principles Chau references apply when plaintiffs sue under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII").  <u>See</u>, <u>e.g.</u>, <u>Burlington</u>, 524 U.S. at 754−55 ("turn[ing] to

---

[7] All four predicate counts underlying Chau's claim of vicarious liability (battery, assault, IIED, and NIED) are based on the alleged sexual assaults or sexual commentary related to offers of employment and investment. (<u>E.g.</u> SAC ¶¶71, 75−76, 80, 82; Doc 21.)

principles of agency law, for the term 'employer' is defined under Title VII to include 'agents'") (citing 42 U.S.C. § 2000e(b)); id. at 758 (determining that "[i]n limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment" as stated in Restatements (Second) of Agency § 219(2)). All of the additional cases Chau cites are brought under Title VII. See, e.g., Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 269, 273−76 (2d Cir. 2016); Dawson v. Cty. of Westchester, 351 F. Supp. 2d 176, 187−92 (S.D.N.Y. 2004).

New York law, under which Chau brings suit, does not recognize agency principles for vicarious liability. N.X. v. Cabrini Med. Ctr., 97 N.Y.2d 247, 251 (2002) ("Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed . . . within the scope of employment."); see, e.g., Phillips v. Uber Techs., Inc., 16 cv 295 (DAB), 2017 WL 2782036, at *6 (S.D.N.Y. June 14, 2017); Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 305 n.6 (2017); Judith M. v. Sisters of Charity Hosp., 93 N.Y.2d 932, 933 (1999). "[Title VII] case law does not supplant New York law on vicarious liability in a diversity action." Adorno, 312 F. Supp. 2d at 518 n.4. Chau's claim that Granger is vicariously liable for Donovan's conduct committed outside the scope of his employment is dismissed for failure to state a claim.

b. Discrimination in violation of the New York City Human Rights Law

Granger argues that Chau's claims under the NYCHRL do not meet the impact requirement. The Court has already determined that the allegations in the SAC, if taken as true, meet the impact requirement of the NYCHRL. Supra Section I(a)(i); see Bloomberg, 967 F. Supp. 2d at 865 (stating the impact requirement applies to both the NYSHRL and NYCHRL). Granger argues in the alternative that Chau's NYCHRL claim for failure to hire should be dismissed

because Chau does not allege that an available position actually existed at Granger for which she would have been qualified or that Granger may be held responsible for Donovan's conduct.[8]

"[F]ederal courts must consider separately whether [claims are] actionable under the broader New York City standards" for discriminatory violations. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted). "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" Id. at 110 (quoting Williams v. N.Y. City Hous. Auth., 872 N.Y.S.2d 27, 39 (1st Dep't 2009)); see Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018). "With regards to the NYCHRL, the NYSHRL represents 'a floor below which the City's Human Rights law cannot fall.'" Wang, 976 F. Supp. 2d at 539 (quoting Restoration Act of 2005, N.Y.C. Local Law No. 85 § 1 (2005)). Therefore, the requirements of the NYSHRL are looked to as a starting point for the analysis of Chau's claims.

For NYSHRL failure to hire claims, "a plaintiff must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination." Id. at 537; see Mihalik, 715 F.3d at 109−10. "This does not require . . . that a plaintiff must always allege a formal application, though the exception is narrow." Wang, 976 F. Supp. 2d at 537. A plaintiff may be deemed to have applied for a position if she pleads that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal

---

[8]Chau also alleges retaliation under the NYCHRL against Granger. See SAC ¶¶119, 127; N.Y.C. Admin Code § 8-107(7). Granger does not challenge the NYCHRL claims beyond the argument that Chau has not alleged a failure to hire claim. See Granger Mot. to Dismiss at 10; Doc 28 ("Ms. Chau's claims against the Granger Entities are in the best light *failure to hire* discrimination claims under the NYCHRL . . . ."); Reply at 9−10; Doc 47 ("Characterizing those same facts as 'failure to hire', 'retaliation' or 'gender discrimination' does not negate the fact that Plaintiff never applied for a job with granger or articulated why an application was unnecessary.").

procedures endorsed by the employer." Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004); cf. Mauro v. S. New England Telecommc'ns, Inc., 208 F.3d 384, 387 (2d Cir. 2000) (plaintiff pled sufficient facts for failure to promote when he indicated interest in a position, company acknowledged his interest, but position was never formally posted).

In addition, section 13(b) of N.Y.C. Admin Code § 8-107 states that an employer "shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent" under the following circumstances:

> (1)    The employee or agent exercised managerial or supervisory responsibility; or
> (2)    The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action . . . ; or
> (3)    The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin Code § 8-107(13)(b); see Garrigan v. Ruby Tuesday, Inc., 14 cv 155(LGS), 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014) ("The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees.").

The allegations of the SAC, when taken as true, satisfy the requirement that Chau be qualified for an available position. Chau alleges she was qualified for the position as an investment advisor/sales representative/operations employee, both because Mr. Donovan said as much and because she had several years of work in the industry.  See SAC ¶¶14−15; id. at 59 ("Donovan explained that he wanted to hire her because she was senior enough to know all the[] structures and help him and the two managing members of Granger on [a] variety of high-level, complex investment portfolios.").

The SAC further suggests that a vacancy was not posted and that Chau attempted to apply for a position through informal channels.  Chau had several communications with

Donovan over a period of months about a position at Granger and expressed interest in the position to the point of meeting Donovan in San Diego "for the purpose of finalizing the details of Chau's new job at Granger." SAC ¶58; see SAC ¶¶49−59. Their communications included discussion of "salaries, the type of work Chau would do, and Granger in general." SAC ¶58. Through her communications with Donovan she understood that "Granger was aware that Donovan was offering her the job." SAC ¶59. The Court is unpersuaded by Granger's argument that Chau's failure to meet the managing partners of Granger and a three month gap between communications with Mr. Donovan negates Ms. Chau's attempt to apply for an unposted position. (See Granger Reply at 9; Doc 47.) These facts are sufficient to allege that Chau attempted to apply for a position through informal channels endorsed by an employer for a vacancy that was not posted. See Hughes, 304 F. Supp. 3d at 446.

Moreover, Granger may be held liable for Donovan's conduct. As stated above, supra Section I(a)(ii), Chau has alleged sufficiently that Donovan holds managerial or supervisory responsibility within Granger, and the alleged act of refusing to hire based on gender discrimination is itself a managerial act.[9] Where this is the case, "local law on its face appears to impose vicarious liability on an employer . . . without regard to whether the employer or another of its managers or supervisors knew or should have known" of the discriminatory acts. Zakrzewska v. The New School, 598 F. Supp. 2d 426, 434 (S.D.N.Y. 2009), aff'd, 620 F.3d 168 (2010); see Gorman, 146 F. Supp. 3d at 531 (imputing supervisor's discriminatory liability to

---

[9] Granger argues that "Chau's SAC offers no theory of liability" against Granger Management Holdings, LLC, and asks for claims against the holding company to be dismissed on that basis. (Granger Mot. to Dismiss at 11 n.1; Doc 28.) The SAC states that Donovan is the "Principal and Chief Compliance Officer for Granger," defined as both Granger Management LLC and Granger Management Holdings LLC. See SAC ¶2 and p.1. Thus, Donovan's alleged supervisory responsibility may be imputed to both Granger Management LLC and Granger Management Holdings LLC.

company pursuant to § 8-107(13)).[10]  Of course, the facts developed in discovery may prove otherwise.

CONCLUSION

        For the foregoing reasons, Donovan's motion to dismiss is GRANTED as to plaintiff's claims for negligent infliction of emotional distress and violation of N.Y. Executive Law § 296(6), and otherwise DENIED.  Granger's motion to dismiss is GRANTED as to plaintiff's claim for vicarious liability and otherwise DENIED.  Plaintiff may proceed on Counts I, II, III, and VII, and on Count VI except with respect to claims for violations of N.Y. Executive Law § 296(6).  Granger's motion for oral argument is DENIED as moot.  (Doc 29.)  The Clerk is directed to terminate the motions.  (Docs 28, 29, 34, 36.)

        SO ORDERED.

                          P. Kevin Castel
                United States District Judge

Dated:    New York, New York
          January 7, 2019

---

[10] Chau also ares that she has raised plausible claims to hold Granger liable under the other two prongs of N.Y.C. Admin Code § 8-107(13)(b)'s test because Granger knew or should have known of Donovan's conduct.  The SAC does not make any plausible allegations with respect to Granger's knowledge of Donovan's conduct.